# IN THE UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

|  |  |
|---|---|
| 3M COMPANY, a Delaware corporation, and 3M INNOVATIVE PROPERTIES COMPANY, a Delaware corporation, <br><br> Plaintiffs, <br><br> v. <br><br> PHILLIPA COBB <br><br> Defendant. | Court File No. _____ <br><br> **COMPLAINT** <br><br> (Jury Trial Demanded) |

Plaintiffs 3M Company and 3M Innovative Properties Company (collectively 3M), for their Complaint against Defendant Phillipa Cobb, an individual variously doing business, *inter alia*, as Philcobb, Pinkpalmed, Floperlydoperly, and Superbiamed, state:

## THE PARTIES

1.     3M Company is a corporation in good standing organized under the laws of the State of Delaware, having its principal place of business at 3M Center, 2501 Hudson Road, St. Paul, Minnesota.  3M Company designs, develops, manufactures, and sells a wide variety of products, including products in the medical field, in the United States and around the world.

2.     Plaintiff 3M Innovative Properties Company is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business at 3M Center, St. Paul, Minnesota, 55133.

3.     Phillipa Cobb sells stethoscopes and replacement parts over the Internet, doing business as Philcobb, Pinkpalmed, Floperlydoperly, and Superbiamed, among others.  On information and belief, her residence and primary business address is 3305 Lacewood Road, Tampa, Florida 33618.  On information and belief she has also used as a business address 1201 North Main Street, Apt. L, Blacksburg, Virginia  24060

## THE NATURE OF THE ACTION

4.     This is an action for trademark infringement, counterfeiting, and unfair competition under the Lanham Act, 15 U.S.C. 1051 *et seq.*; false advertising under the Lanham Act, 15 U.S.C. §1125(a); deceptive trade practices under the Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.43 *et seq.*; unlawful trade practices under the Minnesota Unlawful Trade Practices Act, Minn. Stat. § 325D.09 *et seq.*; false advertising under the False Statements In Advertising Act, Minn. Stat. § 325F.67 *et seq.*; common law trademark infringement and unfair competition; and patent infringement arising under the Acts of Congress relating to patents, 35 U.S.C. §§ 271, *et seq*.

## JURISDICTION AND VENUE

5.     This Court has original jurisdiction over the federal claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a) and (b).  It has subject matter jurisdiction over the supplemental state claims pursuant to 28 U.S.C. § 1367(a) and 28 U.S.C. § 1332.  The parties are citizens of different states and the value of the interests 3M seeks to protect exceeds the sum of $75,000, exclusive of interests and costs.

6.     The Court has personal jurisdiction over Defendant under Minn. Stat. § 543.19 because, on information and belief, Defendant has transacted business and caused injury in this Judicial District.

7.     Defendant is and has been an Internet seller of stethoscopes and related replacement parts since at least May 2010, offering for sale and selling her products on eBay.com, and has engaged in more than one thousand sales of such products on eBay.com.

8.     Defendant sells and offers her products for sale in various countries of the world, throughout the United States, and specifically in the State of Minnesota. Defendant has entered into a number of sales with Minnesota residents, purposefully availing herself of the benefits and protections of Minnesota law.

9.     Defendant's sales to Minnesota residents include the sale of stethoscope products and replacement diaphragms that bear the trademarks of 3M and are counterfeits of 3M products.  Her sales of ear tip replacement products to Minnesota residents infringe on 3M patents.

10.     Defendant intentionally trades on the intellectual property of 3M to sell her products in Minnesota and to benefit from consumer confusion, mistake, and deception. Her tortious conduct and unfair competition is directed at Minnesota and more specifically at 3M, which is headquartered in Minnesota.

11.     The causes of action of the Complaint arise out of and relate to Defendant's conduct in the State of Minnesota.  Minnesota has a manifest interest in providing

effective means for the companies headquartered here to redress the wrongs that are done

to it by out-of-state actors.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and §

1400(b).

## 3M COMPANY'S TRADEMARKS

13.     3M Company manufactures and sells stethoscopes that are recognized as

being of the highest quality.

14.     Since at least as early as July 1942, 3M Company, or its predecessor-in-

interest, has sold stethoscopes under the LITTMANN brand.  The LITTMANN brand is

exceedingly strong, if not famous, being one of the best-known and most trusted brands

in the medical field.  The United States Patent and Trademark Office issued Registration

Nos. 751,809 and 2,683,822 for use of the LITTMANN mark on stethoscopes on June

25, 1963, and February 4, 2003, respectively.  Exs. A and B.  These registrations are

incontestable.

15.     Since at least as early as February 1988, 3M Company has sold



stethoscopes under the LITTMANN QUALITY Stylized L design mark,                     .

The United States Patent and Trademark Office issued Registration No. 2,681,330 for use

of the LITTMANN QUALITY Stylized L design mark on stethoscopes on January 28,

2003. Ex. C.  This registration is incontestable.  In addition, the United States Patent and

Trademark Office issued Registration No. 1,568,178 for use of the Stylized L design

mark  on stethoscopes on November 28, 1989.  Ex. D.  This registration is

also incontestable.  In addition, the United States Patent and Trademark Office issued

Registration No. 3,728,353 for use of the L mark on stethoscopes on December 22, 2009.

Ex. E.

16.    Since at least as early as August 1997, 3M Company has sold LITTMANN

brand dual-head stethoscopes under the mark CARDIOLOGY III.    The United States

Patent and Trademark Office issued Registration No. 3,619,324 for use of the

CARDIOLOGY III mark on stethoscopes on May 12, 2009.  Ex. F.

17.    Since at least as early as June 1987, 3M Company has sold LITTMANN

brand stethoscopes under the MASTER CARDIOLOGY mark.  The United States Patent

and Trademark Office issued Registration No. 3,253,234 for use of the MASTER

CARDIOLOGY mark on stethoscopes on June, 19, 2007. Ex. G.

18.    Since at least as early as March 1969, 3M Company has also branded its

stethoscopes and sold them under the famous 3M trademark.  The United States Patent

and Trademark Office issued Registrations Nos. 2,097,658 and 2,097,659 for use of 3M

on stethoscopes on September 16, 1997. Exs. H and I.  These registrations are

incontestable.  On March 18, 2008, the United States Patent and Trademark Office also

issued Registration No. 3,398,329 for use of 3M on stethoscopes.  Ex. J.

19.    The 3M Company trademarks described in paragraphs 14-18 are hereafter collectively referred to as the "3M Marks."

## 3M COMPANY'S BUSINESS

20.    3M Company has carefully nurtured the goodwill associated with the 3M Marks.  3M Company has invested significantly in promoting these trademarks and in assuring that the trademarks are associated with the highest quality products available. Through 3M Company's extensive efforts, the 3M mark, the LITTMANN brand, the MASTER CARDIOLOGY mark, CARDIOLOGY III mark, the Stylized L design marks and the L mark have come to represent the best stethoscopes available, with consistently high quality workmanship and materials, and outstanding acoustic performance.  The 3M Marks are among the best known in the medical field and are extremely valuable.

21.    One of the components of a stethoscope is its diaphragm.  3M Company sells replacement diaphragms for its LITTMANN brand stethoscopes.  These diaphragms are distinctively branded with the LITTMANN QUALITY Stylized L design mark.

22.    3M Company has used the 3M Marks in advertising, on the Internet, in print and other promotional materials and on packaging associated with 3M Company stethoscopes.  3M Company's extensive use and promotion of the 3M Marks has created highly distinctive trademarks that are widely recognized by the consuming public as identifying 3M Company as the source of the stethoscopes associated with the marks. The 3M Marks are extremely valuable commercial assets because of the substantial goodwill associated with them.

## THE PATENT IN SUIT

23.     On September 12, 1995, the United States Patent Office duly and legally

issued United States Patent No. 5,449,865 ("the '865 patent"), entitled EAR TIPS

HAVING MOLDED-IN RECESSES FOR ATTACHMENT TO A STETHOSCOPE.

24.     3M Innovative Properties Company owns the '865 patent by assignment.

3M Company is the exclusive licensee of the '865 patent and has standing to bring an

action for infringement of the '865 patent.  A true and correct copy of the '865 patent is

attached as Exhibit K to this Complaint and is incorporated by reference.

## UNLAWFUL CONDUCT BY DEFENDANT

25.     Defendant, doing business under various names including but not limited to

Philcobb, Pinkpalmed, Floperlydoperly, and Superbiamed, sells stethoscopes and

replacement parts for stethoscopes, including ear tips and diaphragms, over the Internet

on at least eBay.com.

26.     Defendant uses the 3M Marks to attract purchasers and potential purchasers

to her online offers and to deceive and confuse these purchasers and potential purchasers

into buying Defendant's stethoscopes and replacement parts, mistakenly believing them

to be genuine stethoscopes and replacement parts from 3M Company or in some way

sponsored, endorsed, or approved by, or affiliated or connected with, the 3M Company.

27.     Defendant's actions, which are designed to cause and have in fact caused

purchasers and potential purchases to be confused, mistaken, or deceived when

purchasing Defendant's stethoscopes, include at least the following:

a.      Offering for sale and selling stethoscopes bearing the LITTMANN mark, an example of which is depicted in Exhibit L;

b.      Offering for sale and selling stethoscopes bearing the 3M mark, an example of which is depicted in Exhibit M;

c.      Offering for sale and selling stethoscopes with a diaphragm bearing the LITTMANN QUALITY Stylized L design mark, an example of which is depicted in Exhibit N;

d.      Offering for sale and selling replacement stethoscope diaphragms bearing the LITTMANN QUALITY Stylized L design mark, an example of which is depicted in Exhibit O;

e.      Offering for sale and selling stethoscopes through eBay.com using titles and descriptions displaying the LITTMANN mark, examples of which are depicted in Exhibits P, Q, R, S, and T;

f.      Offering for sale and selling stethoscopes through eBay.com using titles displaying the mark "M Cardiology Littmann," and descriptions displaying the MASTER CARDIOLOGY mark, an example of which is depicted in Exhibit Q;

g.      Offering for sale and selling stethoscopes through eBay.com using titles and descriptions displaying the CARDIOLOGY III mark, examples of which are depicted in Exhibit R;

h.      Offering for sale and selling replacement stethoscope ear tips through eBay.com using titles, descriptions, and photographs displaying the

LITTMANN mark and the LITTMANN QUALITY Stylized L design mark, examples of which are depicted in Exhibit S;

i.    Offering for sale and selling replacement stethoscope diaphragms and rings through eBay.com using titles, descriptions, and photographs displaying the LITTMANN mark and the LITTMANN QUALITY Stylized L design mark, examples of which are depicted in Exhibit T.

28.    In response to 3M Company's demands in writing that Defendant cease and desist her various actions of trademark infringement, counterfeiting, and unfair competition, and attempts by 3M counsel to follow up by telephone, Defendant continued her willful infringement and unfair competition to purposely trade on the goodwill of 3M Company as described above, but changed her seller name on eBay from "Pinkpalmed" to "Floperlydoperly" and also establishing a separate email account under the name "Superbiamed."  On information and belief, such changes in her name were intended to make it more difficult for 3M to track her infringing activity.

29.    Defendant also offers for sale and sells her counterfeit and infringing stethoscope and replacement part products that trade on 3M Marks on eBay.com websites directed to prospective customers in at least Singapore, the United Kingdom, Germany, Ireland, and the Philippines.

30.    On information and belief, Defendant's counterfeit and infringing activities directed at customers outside of the United States are based from her Florida location and all of her actions are taken from and in the United States.  Defendant's actions in the

United States, including the filling of orders, are an essential part of her counterfeit and infringing actions directed to customers outside of the United States.

31.     Defendant's offers for sale and sale of her counterfeit and infringing products outside of the United States affect United States commerce, including lost sales of legitimate 3M stethoscopes and replacement parts and irreparable harm to 3M's reputation as the maker of stethoscope products of the highest quality.

32.     There is no association or affiliation of any kind between 3M Company and Defendant, and Defendant's use of the 3M Marks is without 3M Company's permission or consent.

33.     The stethoscopes and stethoscope parts in connection with which Defendant has used the 3M Marks are counterfeit products that were not manufactured, authorized, or sponsored by 3M or by any 3M affiliate.

34.     3M Company is the prior user of all of the 3M Marks, each of which Defendant has knowingly chosen to infringe.

35.     Defendant continues to infringe the 3M Marks, despite 3M Company's demands to cease and desist, in willful disregard of the rights of 3M Company and the interests of the public.

36.     Defendant's unauthorized use of the 3M Marks and designations that are confusingly similar to the 3M Marks takes from 3M Company the ability to control the nature and quality of products sold under the 3M Marks, and places the inestimable reputation and goodwill of 3M Company in the hands of Defendant, over whom 3M Company has no control.

37.    3M has been damaged by Defendant's infringement of the 3M Marks and will continue to be damaged in the future and suffer irreparable injury unless Defendant is enjoined from infringing, inducing the infringement, and contributing to the infringement of the 3M Marks.  In addition, Defendant's infringement of the 3M Marks will, if allowed to continue, endanger the public if medical professionals using Defendant's stethoscopes misdiagnose or improperly diagnose patients in the mistaken reliance on the belief that they have a genuine LITTMANN stethoscope.

38.    Defendant has directly infringed, induced infringement, and contributed to the infringement of the '865 Patent through the use, sale, and offer for sale of stethoscopes with ear tubes that are flanged at the ends where the ear tips are to be attached, and/or stethoscope ear tips having molded-in recesses. Attached as Exhibit U are photographs of at least some of Defendant's infringing products.

39.    3M has been damaged by Defendant's infringement of the '865 patent and will continue to be damaged in the future and suffer irreparable injury unless Defendant is enjoined from infringing, inducing the infringement, and contributing to the infringement of the '865 Patent.

40.    Defendant competes with 3M for customers and sales of stethoscopes and related products, including ear tips and diaphragms.

40.    Defendant expressly represents in her Internet advertising and marketing of Defendant's stethoscopes that they are "Identical to Littman *[sic]* stethoscopes both in design and with great acoustic quality," and that they are "Acoustically identical to Littman *[sic]*."  Defendant also expressly represented that the stethoscope she sold under

the title "M Cardiology Littmann Reproduction" was "identical to Littmann stethoscopes both in design and acoustic quality," and that it was "in the design and weight of the Littmann Master Cardiology."  Examples of those representations are depicted in Exhibits P, Q, and R.

42.     Defendant's representations as to the comparative design and quality of her stethoscopes with 3M's LITTMANN stethoscopes, including but not limited to her representations as to the acoustic quality of her stethoscopes in comparison with that of 3M's LITTMANN stethoscopes, are literally false.

43.     Defendant's representations as to the comparative quality of her stethoscopes with 3M's LITTMANN stethoscopes, including but not limited to her representations as to the acoustic quality of her stethoscopes in comparison with that of 3M's LITTMANN stethoscopes, are material and likely to deceive and influence the buying decisions of consumers exposed to those false and misleading statements.

44.     The false and misleading advertising claims will, if allowed to continue, cause irreparable harm to 3M's reputation for high quality stethoscopes with outstanding acoustic performance, and will endanger the public if medical professionals using Defendant's stethoscopes misdiagnose or improperly diagnose patients in mistaken reliance on Defendant's false claims of quality and acoustic performance.

## FIRST CLAIM:  COUNTERFEITING AND INFRINGEMENT OF REGISTERED TRADEMARKS UNDER THE LANHAM ACT

45.     Paragraphs 1 through 44 are incorporated by reference and made a part of this claim.

46.     Defendant's actions are likely to cause confusion, mistake, or deception as to the source of origin of Defendant's products in that purchases and potential purchases are likely to believe that Defendant's products are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to 3M Company.

47.     Defendant's actions falsely indicate to purchasers and potential purchasers that Defendant's products originate with 3M Company, or are affiliated, connected or associated with 3M Company, or are sponsored, endorsed, or approved by 3M Company, or are in some manner related to 3M Company and its products.

48.     Defendant's actions include the use of spurious counterfeit marks likely to cause confusion, mistake, or deception as to the source of origin of Defendant's products and to falsely indicate to purchasers and potential purchasers that Defendant's products are products of 3M Company.

49.     As a direct result of Defendant's counterfeiting and infringing actions and the likely confusion, mistake or deception, 3M Company has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

50.     As a direct result of Defendant's actions and the likely confusion, mistake or deception, 3M Company has suffered those damages that will be proven at trial.

51.     The likely confusion, mistake, or deception caused by Defendant is in violation of 15 U.S.C. §1114.

52.     Pursuant to 15 U.S.C. §1117, 3M Company is entitled to recover the costs of this action.  The intentional nature of Defendant's counterfeiting, infringement, and other wrongful acts renders this an "exceptional case," entitling 3M Company to an award of attorneys' fees under 15 U.S.C. §1117(a).

## SECOND CLAIM:  FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT

53.     Paragraph 1 through 52 are incorporated by reference and made a part of this claim.

54.     Defendant's actions are likely to cause confusion, mistake, or deception as to the source of origin of Defendant's products in that purchasers and potential purchasers are likely to believe that Defendant's products are provided by, sponsored by, approved by, licensed by, affiliated or associated with, or in some other way legitimately connected to 3M Company.

55.     Defendant's actions falsely indicate to purchasers and potential purchasers that Defendant's products originate with 3M Company, or are affiliated, connected or associated with 3M Company, or are sponsored, endorsed, or approved by 3M Company, or are in some manner related to 3M Company and its products.

56.     As a direct result of Defendant's actions and the likely confusion, mistake or deception, 3M Company has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

57.     As a direct result of Defendant's actions and the likely confusion, mistake or deception, 3M Company has suffered those damages that will be proven at trial.

58.     The likely confusion, mistake, or deception caused by defendant is in violation of 15 U.S.C. §1125(a).

59.     Pursuant to 15 U.S.C. §1117, 3M Company is entitled to recover the costs of this action.  The intentional nature of Defendant's wrongful acts renders this an "exceptional case," entitling 3M Company to an award of attorneys' fees under 15 U.S.C. §1117(a).

## THIRD CLAIM:  DECEPTIVE TRADE PRACTICES

60.     Paragraph 1 through 59 are incorporated by reference and made a part of this claim.

61.     Defendant's actions are deceptive trade practices in violation of Minn. Stat. §325 D. 44, including Minn. Stat. §325 D. 44, subdivision (1) through (5).

62.     As a direct result of Defendant's actions, 3M Company has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

63.     As a direct result of Defendant's action, 3M Company has suffered those damages that will be proven at trial.

64.     Pursuant to Minn. Stat. §325 D.45, 3M Company is entitled to recover its costs and attorneys' fees.

## FOURTH CLAIM:  UNLAWFUL TRADE PRACTICES

65.     Paragraph 1 through 64 are incorporated by reference and made a part of this claim.

66.     Defendant's actions are unlawful trade practices in violation of Minn. Stat. §325D.09 et seq.

67.     As a direct result of Defendant's actions, 3M Company has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

68.     As a direct result of Defendant's action, 3M Company has suffered those damages that will be proven at trial.

69.     The public is being harmed by Defendant's counterfeiting, infringement, and other wrongful use of the 3M Marks.  Enjoining her actions will benefit the public in general and individual consumers in particular.

70.     Pursuant to Minn. Stat. §325 D.15 and Minn. Stat. §8.31(3a), 3M Company is entitled to recover its costs, disbursements, costs of investigation, and reasonable attorneys' fees.

## FIFTH CLAIM:  UNFAIR COMPETITION

71.     Paragraphs 1 through 70 are incorporated and made a part of this claim.

72.     Defendant's actions infringe on the rights of 3M Company and are unfair competition.

73.     As a direct result of Defendant's actions, 3M Company has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

74.     As a direct result of Defendant's action, 3M Company has suffered those damages that will be proven at trial.

## SIXTH CLAIM:  PATENT INFRINGEMENT

75.     Paragraphs 1 through 74 are incorporated and made a part of this claim.

76.     Defendant has directly infringed, induced infringement, and contributed to the infringement of the '865 patent through the use, sale, and offer for sale of stethoscopes having flanged ear tubes and/or ear tips having molded-in recesses.

77.     3M has been damaged by Defendant's infringement of the '865 patent and will continue to be damaged in the future and suffer irreparable injury unless Defendant is enjoined from infringing, inducing the infringement, and contributing to the infringement of the '865 patent.

78.     Defendant competes with 3M for customers and sales of stethoscopes and related products, including ear tips.

79.     As a direct result of Defendant's actions, 3M Company has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

80.     As a direct result of Defendant's action, 3M Company has suffered those damages that will be proven at trial.

**SEVENTH CLAIM: FALSE ADVERTISING UNDER THE LANHAM ACT**

81.     Paragraphs 1 through 80 are incorporated and made a part of this claim.

82.     Defendant's advertising and marketing contain false statements of fact regarding her stethoscopes, including the claims specifically described in paragraphs 1 through 44 above, and those depicted in the accompanying exhibits.

83.     Defendant's false and misleading claims are literally false and misrepresent the nature, characteristics, or qualities of the Defendant's stethoscopes on their own and in comparison to 3M's LITTMANN stethoscopes.

84.   Defendant's false and misleading claims are likely to deceive or confuse a substantial segment of the buying public.

85.   Defendant's false and misleading claims are material and have influenced or are likely to influence the buying public's purchasing decisions.

86.   Upon information and belief, Defendant knows or should know that these claims are false and misleading.  Defendant's conduct in this regard is willful and egregious.

87.   Defendant's advertising and marketing, as described above, violate Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

88.   As a direct result of Defendant's actions, 3M has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

89.   As a direct result of Defendant's actions, 3M has suffered those damages that will be proven at trial.

## EIGHTH CLAIM: FALSE ADVERTISING UNDER MINNESOTA LAW

90.   Paragraphs 1 through 89 are incorporated by reference and made a part of this claim.

91.   Defendant's actions constitute false advertising in violation of Minn. Stat. §325F.67.

92.   As a direct result of Defendant's actions, 3M Company has suffered and will continue to suffer irreparable harm if Defendant's conduct is not enjoined.

93.   As a direct result of Defendant's actions, 3M Company has suffered those damages that will be proven at trial.

94.    The public is being harmed by Defendant's false advertising.  Enjoining her actions will benefit the public in general and individual consumers in particular.

95.    Pursuant to Minn. Stat. §325 F.67 and Minn. Stat. §8.31(3a), 3M Company is entitled to recover its costs, disbursements, costs of investigation, and reasonable attorneys' fees.

## PRAYER FOR RELIEF

WHEREFORE, 3M respectfully requests that the Court enter judgment as follows:

1.    That judgment be entered in favor of 3M and against Phillipa Cobb on all claims alleged herein.

2.    Ordering that Defendant, her agents, servants, employees, attorneys, representatives, related companies, any persons or entities affiliated with her, and all persons controlling, controlled by, or in active concert or participation with, through, or under her, and all those in privity with or acting in concert with her, be preliminarily and permanently enjoined and restrained from directly or indirectly:

a.    Using or causing to be used 3M, LITTMANN, MASTER CARDIOLOGY, CARDIOLOGY III, the LITTMANN QUALITY Stylized L design mark, the Stylized L design mark, the L mark, or any other name or mark confusingly similar thereto on or in association with goods not originating from the 3M Company in any manner, including, without limitation, as trademarks, service marks (or any other type of designation) trade names, business names, designations, descriptors, product identity statements, product configurations,

domain names, email addresses, keywords, or metatags, on products, packaging, or shipping containers, in product literature, promotional literature, or advertisements, on websites, Internet sites, online auctions or social networking sites;

b.      Performing any actions or using any words, names, styles, titles, logos, or marks which are likely to cause confusion or mistake, or to deceive; or to otherwise mislead the trade or the public into believing that Phillipa Cobb or her business is in some way connected, affiliated, or associated with 3M Company, or that Phillipa Cobb's products originate with 3M Company or are offered with the approval, consent, authorization, or under the supervision of 3M Company;

c.      Performing any other acts that directly or indirectly infringe or induce or contribute to the infringement of any of the 3M Marks;

d.      Using any words, names, styles, titles, or marks that create a likelihood of injury to the business reputation of 3M Company or the goodwill associated therewith.

e.      Using any trade practice whatsoever, including those complained of herein, which tend to unfairly compete with or injure 3M Company's business or goodwill.

3.      Ordering that Defendant, her agents, servants, employees, attorneys, representatives, related companies, any persons or entities affiliated with her, and all persons controlling, controlled by, or in active concert or participation with, through, or under her, and all those in privity with or acting in concert with her, be enjoined from

further infringing, inducing the infringement, or contributorily infringing United States Patent No. 5,449,865.

4.      Ordering that Defendant, her agents, servants, employees, attorneys, representatives, related companies, any persons or entities affiliated with her, and all persons controlling, controlled by, or in active concert or participation with, through, or under her, and all those in privity with or acting in concert with her, be enjoined from disseminating or causing the dissemination of false or misleading claims in any packaging, advertising, marketing, or other promotional activities or materials for her stethoscopes and related products, including but not limited to claims that such stethoscopes are equal or comparable in quality or in acoustic performance to 3M's LITTMANN stethoscopes.

5.      Ordering that Defendant identify to 3M, under oath, all individuals or entities from whom she purchased or imported the infringing stethoscopes and related products.

6.      Ordering that Defendant deliver up for destruction all goods, components for goods, packaging, stationery, signage, advertisements, brochures, promotional materials, and all other materials of any kind bearing the 3M Marks or any simulation, reproduction, copy or colorable imitation of the 3M Marks.

7.      Ordering that Defendant deliver up for destruction all ear tips and ear tubes infringing United States Patent No. 5,449,865.

8.     Ordering that Defendant deliver up for destruction all packaging, advertising, marketing or other promotional materials containing any false or misleading claims about the quality of her stethoscopes or related products.

9.     Ordering that Defendant contact in writing, with a copy to counsel for 3M, all customers to whom she sold stethoscopes or replacement parts bearing any of the 3M Marks informing them that such stethoscopes and replacement parts were counterfeit products and seeking the return of such products in exchange for a full refund of all monies paid.

10.     Ordering that Defendant submit a report in writing and under oath to the Court and 3M within thirty (30) days of the date of entry of the Order, setting forth in detail the manner and form by which she has complied therewith.

11.     Awarding to 3M all damages, compensation and monetary recovery to which 3M is entitled under law as a result of Defendant's infringement of the 3M Marks, to be trebled in accordance with 15 U.S.C. § 1117;

12.     Ordering Defendant to account for and disgorge all profits derived from her unlawful and infringing conduct, to be trebled in accordance with 15 U.S.C. § 1117.

13.     Awarding compensation to 3M for all injury resulting from Defendant's false advertising and deceptive practices, including lost profits and expenditures for past or future corrective advertising, to be trebled in accordance with 15 U.S.C. § 1117.

14.     Awarding compensation to 3M for all injury resulting from Defendant's infringement of United States Patent No. 5,449,865.

15.     Awarding to 3M pre-judgment interest under 35 U.S.C. § 284 and post-judgment interest under 28 U.S.C. § 1961 at the maximum rates permitted by law.

16.     Awarding to 3M statutory damages pursuant to 15 U.S.C. § 1117(c).

17.     Awarding to 3M all of its litigation expenses, including costs of investigation, reasonable attorneys' fees and the costs of this action.

18.     Awarding 3M such further relief as this Court deems just and proper.

**MERCHANT & GOULD**

Dated: January 4, 2011.

Of counsel:

Hildy Bowbeer
Assistant Chief Intellectual Property
Counsel
3M Innovative Properties Company
3M Center, 220-9E-01
St. Paul, MN  55144
Telephone: (651) 737-3194

By:  s/ Allen Hinderaker
      Allen Hinderaker
      William Schultz
      3200 IDS Center
      80 South Eighth Street
      Minneapolis, MN  55402-2215
      Telephone:  (612) 332-5300
      Facsimile:  (612) 332-9081

*Attorneys for Plaintiffs 3M Company and*
*3M Innovative Properties Company*